v. Gibbs. Good morning and may it please the court. I'm Ravinder, an assistant federal public defender for the appellant Mr. Gibbs. Because police visited this armed seizure on Mr. Gibbs without an arrest warrant, the seizure is only constitutional if it fits within a delineated and defined exception to the warrant rule. Either this was, as the district court found, a Terry stop, or more recently, as the government has submitted, a traffic violation. Mr. Gibbs submits that it was neither. The Terry stop requires that at the time of the seizure, the police have an articulable and a reasonable suspicion that crime was afoot and a particularized basis to believe that my client, Mr. Gibbs, was the one that in fact committed that crime. Is there a difference for our purposes between a Terry stop and a traffic stop? There is, your honor. There is in one critical respect. A Terry stop requires reasonable suspicion that crime is afoot. Crime. A traffic stop requires probable cause that the person... So you need more for a traffic stop based on probable cause than you do for a Terry stop? That's right. But in many respects, your honor. But in other respects, it'd be fair to say they're pretty much the same? Yes, that's correct. They're the same insofar as the other rules which Terry and its progeny have given us, temporality, duration, reasonability... But I mean the Supreme Court has observed that most traffic stops resemble in duration, nature, and atmosphere the kind of brief detention authorized in Terry. That's correct, your honor. That's correct. Here, what is clear is that the police did not believe that Mr. Gibbs had committed any crime whatsoever when they seized him with drawn guns. And it is also clear that at all times, Mr. Gibbs, my client, was a pedestrian. Is there any question that this was a high crime area? That was the finding of the district court, your honor. You disagree with that? At this point, no. At this point, no. Don't we have precedents out there that say that when police officers make a traffic stop, if there are other people around, that they can also detain those people for a brief period of time until they can figure out the situation? And isn't that exactly what happened here? To answer your first question, yes. There are precedents. To answer your second question, no. And the answer to the second question is inherently tied in with the first. The first precedent that's on point, which stands for the proposition that police can detain a passenger, is Marilyn V. Wilson. The principles that animate a traffic stop And that would be without any individualized, reasonable suspicion of any criminal activity on the part of the passenger, right? As to the part of the passenger. But it's for a very particular reason, which I would submit does not apply here. Two, in fact. Number one, starting from Pennsylvania v. Mims, proceeding into Maryland v. Wilson, and more recently in Brennan v. California, the Supreme Court's principles as to traffic stops have always been animated by the fact that to enforce the traffic laws on the road, the police must necessarily seize the driver of the car and his occupants. Because the car's proceeding down the road and to enforce the law, you have to pull it over. Number one. Number two, out of that fact of that inherent seizure, they've held that many things that happen in the course of a traffic stop, asking the driver to get out. Why did he put his hands up? He put his hands up because he was confronted by an overwhelming show, of course, of police authority, namely the presence of hands. There's a debate as to whether the officers had drawn weapons, right? The district court has resolved that debate, and unless it's clearly erroneous, I would submit there is no debate. The district court found that the weapons were drawn. Is that why his hands were up? I would submit that's why, Judge. The seizure of an individual who's a passenger in a car, pursuant to a traffic stop, has to occur. And anything flowing from that, moving the passengers in and out of the car, is de minimis. When did he make the statement about the fact that he had a gun in his pocket and no permit? He made that statement, as the district court found, after the police had alighted their vehicles, after their guns were unholstered, and after he and the driver of the car, Mr. Jones, were channeled between two other cars with police on either end. Second principle, which is operative in the traffic stop context, but not as operative in this context, is the rationale that traffic stops, as the Supreme Court found in Pennsylvania v. Mims, pose a unique harm to officers. In that case, Pennsylvania v. Mims. Let me ask you this question, and that's why I was asking about the difference, if any, between classic Terry stop and a traffic stop. This is sort of a hybrid case. But let's suppose, for the purpose of my question, the officer saw what he said he saw, saw a traffic violation, turned his car around, pulled in front of the car, had his lights on, and suppose, instead of the passenger and the driver having already exited, the two of them were still in the car. At that point, I take it you would agree that the officer would have been free to direct the driver and the passenger to leave the car, right? I would, Your Honor, but there's one critical... Just bear with me for a second. That he could have done, could he not? He would, but my client was never alleged to have been a passenger. I'm asking a different question. Okay. And he could have detained the passenger, at least briefly. That's right. And cited the driver for a violation. That's right. Now, you say this isn't a traffic stop because the car had already come to a halt, right? There was no one in the car that... I mean, is that, is it correct that we should not look at this as a traffic stop case, but as just a more usual Terry stop that just happened to be near a car, that just happened to be running, and that just happened to be in the middle of the street from whence the two just exited? The two didn't exit, Your Honor. Only one exited. My client was never a passenger, but everything else you said, I would agree. Your passenger, your client was not a passenger? Never. Never. I see. And that's a critical distinction, which takes us further afield from the traffic stop line. Was it clear from the facts of the case that your client was standing right next to the driver between the car and another car, or between the car and the curb? He was within two feet of the car? That was clear. The reason that was clear was because... No, no, no. I just wanted to be sure. So he's within two feet of the car, standing next to the driver. The car is in the middle of the street, facing in the wrong direction? It's not exactly in the middle of the street, but it is obstructing the flow of traffic. Well, it's a two-way street, one lane each way. Right. And as I understood it, the Audi was parked in such a way as to block the traffic from coming in that direction. That's correct. Because it was in the street. It wasn't parked at the side of the curb. It was not fully in the swale. There was another car there. Right. It blocked the traffic. That's correct, Judge. And the two of them were standing next to the car, and the engine was running? The two of them were standing next to the car. The door was open. The lights were on. It was unclear if the engine was running. What is equally clear is that there were several... I'm sorry. I thought there was testimony that wasn't refuted, that the engine was still running. Did I misapprehend that? I believe that the testimony was that the lights were on. There were five other adults immediately in the vicinity of the vehicle, because right behind the car is the front yard of an apartment building, which came out in the testimony. Help me understand just the physical. The Audi is in the street, blocking oncoming traffic. The lights are on. Is the door open? The door is open. Door is open, and standing next to the vehicle, within two feet of the vehicle, are your client and the driver. That... Can that be accurate? That's correct, and there's two other things to add to that. Number one, there are two police cars that are essentially sandwiching the Audi in at its hood and its trunk, and then immediately between... Immediately next to the Audi is another parked car. What is also clear is this, Detective Lopez, the one who initially saw this parking violation, and the one who summoned backup officers, clearly knew who the driver was. He clearly knew the driver was Mr. Jones, and we know that because he said he went directly to make contact with the driver. What about the other officer? Officer Dweck claims to have not known. He was summoned there for the purpose... The identity of the driver. Officer Dweck was summoned... Is there anything disputing that? That he did not know? There is nothing disputing it, because he had no pre-existing knowledge. So we can accept that two officers and two patrol cars alighted on the black Audi in the middle of the street. One of them clearly knew who the driver was, and the other did not, and the other officer comes up to your client who's standing within two feet of the car with the door open and the lights on, and both of them, the two officers, are blocking any egress by either the driver or your client. Do I have that right? You have that correct, sir. Where are the other people standing in relationship to the car? They're standing in a yard that's immediately behind the car, so immediately abutting the street. They were not in the street? They were not on the street. They were not on the street. Whereas the defendant and the driver were standing on the street next to the car? They were standing... It's unclear. Most likely, they were standing in the swale next to the car, which is parked on the street, as Your Honor mentioned, and there's another car next to them. It seems that my time is... Go ahead and take another two minutes. You've been answering our questions. Well, thank you, Your Honor. But going back to that issue of whether Officer Dweck's ignorance should factor into this court's... I guess what I'm asking is why shouldn't we treat this as basically a traffic stop case? Whether your client was in the car or not, they certainly had some reason to believe he was associated with and in the car. He was next to the car, the car was on, the lights were on, the door was open, and they came upon it just almost just seconds after they stopped the car. For more than one reason, Judge. I won't rehash what I've said already about what animates a traffic stop and what makes it different. More importantly, though, the government has not submitted any authority that would say that the traffic stop principles apply to pedestrians or people that are not actually in a car at the time of the seizure. Number two, no court has extended the Terry Doctrine... Actually, the Supreme Court and this court have not extended the Terry Doctrine to parking tickets. The principles of Terry have always been, or remain, that in order to... Well, this was more than a parking ticket, wasn't it? Well, as to the driver... In terms of the vehicular violations, it was more than parking in a zone that didn't allow you to park or something like that, right? I mean, in fairness, the car was in the middle of the road blocking oncoming traffic with the light on and the door open. Is that the same thing as a parking violation? I pull into South Miami, I pull over to the side, the meter maids, boy, they're on top of me. And if I'm gone for one second, they're going to hit me with a ticket. It's a little bit different, isn't it? Pursuant to Florida section 316.1945, which is what Mr. Gibbs, Mr. Jones was cited under, the answer is no. He received a citation for obstructing traffic in a parked vehicle. I see my time is up again, Judge. Thank you. And you've reserved four minutes. You've got the full period. Thank you. Thank you, Your Honor. Good morning, and may it please the court. Eileen Cannon on behalf of the United States. Here with me is Gregory Schiller, who represented the government in the district court. The district court properly denied the defendant's motion to dismiss a loaded firearm that he told officers he had on him just seconds into a lawful trial. I have a question. The second part of the 11th Circuit's Terry analysis is that the stop was reasonably related in scope. Would you tell me why in this case it was reasonably in scope? Yes, Your Honor. The reason why there is no question about the scope or the nature of the intrusion being unreasonable here is because within seconds of the officer's arrival, Detective Dweck observes Mr. Gibbs, who is standing right alongside the driver, leaning on the Audi, channeled in between the Audi in a car just south of the Audi. And he begins to act evasively right away, looking to his left and right, walking backwards away from Detective Dweck. And then he turns his body only to see Detective Lopez behind him, dressed in black. Why would he? You're claiming now that he was going to escape or try to? Well, there is evidence in the record, very specific evidence. And you've got a bunch of police officers with drawn weapons? Well, to be clear, there were two. You'd have to be idiotic to want to escape from that situation. Well, there were two officers, Detectives Lopez and Dweck, that arrived at the same time. Immediately upon their arrival, they see Mr. Gibbs, as I mentioned, acting evasively. And within seconds of that, he's saying, I've got to be honest. I have a gun on me. Under those circumstances, in that split-second encounter, our position is that there is no amendment violation. And there is no unreasonable scope, given the extremely short duration of that stop. Let me tell you the one thing about your side of this case that troubles me a little bit. As I understand it, at the evidentiary hearing the district court conducted in this case, both officers testified that as they approached the car, neither one of them had their guns drawn, and that they did not fear for their safety. But yet, and the district court discredited that testimony. But the district court went on to find that they acted reasonably in drawing their weapons for their own safety. It kind of seems like a contradiction based on what the officer said and what the district court found. Does that make any difference in the ultimate outcome of this case? No, Your Honor. Our position is that even accepting the facts as found by the district court, it wasn't unreasonable for the officers in that split-second encounter to draw their weapons for officer safety, which is what the district court found. And although, as they testified, they might not have had an actionable threat from Mr. Gibbs at that exact moment, that doesn't mean that they don't approach these traffic stops as they always do, with extreme caution. Because as Detective Dweck testified, these encounters can often result in much more dangerous circumstances to officers. And that's something that both the Supreme Court and this court have routinely made clear that officers are not required to subject themselves to unreasonable risk. Is the reasonableness inquiry an objective test or a subjective test? Objective. Let me ask you this. Is this a traffic stop or is this a Terry stop, or does it make a difference? It doesn't make a difference. And it's clear— How would you characterize what happened here? This is a traffic stop under the rubric of Terry. It's very clear under binding authority that Terry applies and gives officers a lawful right to conduct a traffic stop pending investigation to a vehicular violation. That's clear as recently as in Arizona v. Johnson, for example, and in numerous cases of this court. There is no limitation on traffic stops to, as my friend on the other side would say, a criminal or felony— The Supreme Court has said that a traffic stop is not quite the same thing as a Terry stop. It may look alike in some ways, but it's not quite the same thing. Most traffic stops this court has observed resemble in duration and atmosphere the kind of brief detention authorized in Terry. But it's not quite the same thing, right? Mostly with traffic stop, you've got probable cause to believe there was a vehicular violation. That's correct, Your Honor. Terry, you generally don't have probable cause. You have reasonable, objectively reasonable suspicion to detain briefly for the purpose of inquiring further about some unusual or suspicious circumstance. So one has probable cause, the other does not. In other respects, they're pretty much the same? Yes, I would submit they're governed under the same general legal principles. And the principles of Terry, which although Terry, of course, originally concerned individuals walking around and suspected of casing a store, those principles, I think, time and time again have been extended to the traffic stop context, which is why the two-pronged test, so to speak, asks, number one, did the officers have lawful grounds to suspect that a traffic violation had occurred? And number two, were their actions reasonably related in scope to the reason for the stop in the first place? Can we tell from the fact pattern whether Gibbs was a passenger or not? It's not clear whether he was a passenger. There's no finding by the trial court. That's correct. But he was standing in a very narrow space right alongside the driver, channeled in between the Audi and a car just south of the Audi. So I think any reasonable officer would assume that he's associated with that vehicle. And because of that close physical proximity and because of Mr. Gibbs' immediate evasive behavior upon their arrival and the seconds-long nature of the encounter. Well, did Lopez testify that there was a passenger? No, Your Honor. Or did he say there wasn't a passenger or was he never asked?  The officer who spots the traffic violation, puts on his light to pull him over, doesn't testify whether or not there was anyone in the car other than Jones. I don't believe he testifies that there was a passenger in the car when he observed him obstruct traffic and drive into oncoming traffic. But I would point out that Detective Dweck did not know who the driver was. They arrived at the- No, no, I understand that. I'm just asking whether Lopez testified that one guy was driving the car alone and there was no one in it or whether there was a passenger in the car or whether he just didn't say anything about the passenger at all. He didn't say anything about a passenger. So I'm comfortable saying that it was one person driving that Audi. Where were these other folks who were in the yard or nearby? How many were there and how far were they from the Audi and these two folks who were next to the car? It's not clear in the record how far away they were. The district court found that there were, quote, a number of people around. But it is clear that only Mr. Gibbs and Mr. Jones were standing right alongside each other and nobody else was in their close physical proximity other than the two of them. So regardless of how many feet specifically the other people around, there were unquestionably people around in a high crime area known for, quote- What was the basis for detaining Gibbs? We all agree, right, there was some kind of detention of Gibbs here, right? No dispute about that. Correct. May not have been a formal arrest, but he sure wasn't free to leave. Correct. We are assuming that there's- What was the basis for detaining Gibbs? Well, the basis for detaining Gibbs is that the officers approach the scene to issue a citation to the driver and because Mr. Gibbs is standing in such close physical proximity to the driver and because within seconds he's telling the officers he has a gun on them, there's basically no way around that reality, which is an unavoidable intrusion given their close physical proximity. So although they might not have initially intended to make contact with Gibbs, he was standing right alongside Mr. Jones and within seconds he says, I've got to be honest, I have a gun on me, which in this high crime area known for drive-by shootings, it really doesn't leave law enforcement with any other option but to at that point secure the weapon and detain Mr. Gibbs. I don't think there's any dispute that once he said he had a weapon, they had to act. The question is whether they could detain him. And the detention, yes, it is reasonable under the Fourth Amendment because there are undisputed traffic violations which allow the officers to approach that vehicle. Mr. Gibbs was standing, as I mentioned, right alongside the driver, channeled in a very narrow space. Within seconds, he's acting evasively in a high crime area and he says, I've got to be honest, I have a gun on me. That's a matter of seconds. And I think given the quickly evolving nature of these encounters, it's not unreasonable under the Fourth Amendment for the officers to have acted as they did based on what they were learning in that split second. Is there any significance to be attached to the fact that they drew their weapons? Ultimately. Does that change the analysis in any way? No. No. Why not? Because... Other than firmly establishing that this was a detention of some kind. That would be... Given the physical relationship between the parties. Correct. Well, that's why, of course, there's no dispute that there's a seizure as soon as the officers are approaching. But even measuring the point of seizure at that point doesn't change the ultimate legal conclusion because they had lawful grounds to conduct a traffic stop of that vehicle. The two individuals are standing right alongside each other within seconds. Mr. Gibbs is exhibiting evasive behavior indicative of flight as Detective Dweck, I think, quite helpfully testified and based on his personal experience in a high crime area and all within a matter of seconds. So the drawing of the weapons, ultimately, as the district court found is not dispositive to the legal analysis and it shouldn't change this court's legal conclusion. If your honors have no further questions, I would respectfully ask this court to affirm the district court's denial of the motion to disperse the loaded firearm. Thanks very much. Let me just ask you a question, a basic question. Plainly, there was a traffic violation the police were certainly in the rights to, if not pull the car over because it had already stopped, to pull in front and behind the Audi, right? They had right to do that. Yes, your honor. And given where the two of them were standing, two officers approached from either side, what is it that the officers should have done with respect to your client that they didn't do? Before he blurted out, I have to be honest with you, I have a gun. What should they have done differently? What was it that they did putting it more affirmatively that was unreasonable? The events in this case were extraordinary and made extraordinary by the fact that there were guns drawn. As an initial matter, to answer your question, Judge, I do not believe the officers should have pulled their guns on Mr. Gibbs or any of the other civilians. Let's just hold aside the firearms for a second. Did they err in any way? Was it unreasonable for them to pull one police car in front of the Audi, which was parked in the middle of the street, and one car behind the Audi, which was parked in the middle of the street? That was perfectly reasonable, right? That was reasonable because that maneuver sees the Audi, but not the individual. Okay, so they're blocking the car, and your client and the driver are standing between the car and another vehicle on the side of the road, right? You have that correct, Judge. So the only way for the officers to come at the two folks standing there was to walk toward them. Effectively, they had detained the two, whether they had drawn their weapons or not, didn't they? Yes, but you're... So let me just ask you, suppose they had never drawn their weapons. Suppose the trial judge had believed their account that they didn't draw their weapons, they weren't fearful of these two folks, and they just came to the two of them, and within seconds, your client blurts out, I have to be honest with you, I have a gun. Would there be any basis to find a Fourth Amendment violation on the hypothetical that I just gave you? On the hypothetical that you just gave, Judge, is there a basis? Yes. Is there as compelling a basis? No. What would be the basis? The basis, one could argue colorably, theoretically, Mr. Gibbs was still seized based on the way the testimony came out. No, I think he was seized. There's no doubt his means of egress were blocked, but given how the two of them were placed between the Audi and another car, Audi is blocked by two police cars, and the two officers come between the two cars and converge on the two of them. They were both blocked there because of where they were standing. We take your account, your client walked over from a sidewalk or the house or whatever to talk to the driver of the car for whatever reason. So the two of them by choice were between two cars, and the cops came and blocked them effectively by approaching them. And your client blurts out he has a gun. I'm hard pressed holding aside the fact that they drew their weapons to see any plausible claim that it violated the Fourth Amendment. Have I missed something there? Then I want to get to what arguably makes the case different, which is that they pull their weapons. Right, Judge. So short of pulling their weapons, I'm hard pressed to see a Fourth Amendment violation. The only thing I would say about the first hypothetical you've posed is this. Returning back to the first principles, even under a traffic stop rubric, you must have probable cause that the individual you were detaining was the one that committed a traffic violation. Two, it can't be an inchoate or an inchoate suspicion or merely a hunch. It's got to be- It's more than an inchoate suspicion. They had reason to believe there was a traffic violation. They had probable cause. They may have had probable cause- To cite the driver, they had probable cause to arrest the driver. The thing is, Officer Lopez specifically knew that there was a traffic violation and who the driver was. But as to whether or not Mr. Gibbs was a driver or passenger, that was just something- Let's assume he wasn't a passenger. Let's assume he just walked out from behind the house to greet his friend. He put himself in such a position where the two of them were necessarily detained by the police. The detention was not unlawful by virtue of them having approach from two sides, was it? The detention was not unlawful by the virtue of them having approach from two sides. Where the detention becomes lawful is if they block someone from moving. That person is seen- Well, there's no question they blocked them. I'm trying to find out what makes this a violation of the Fourth Amendment. Holding aside the firearm, I'm at a loss to see any plausible theory upon which you could say, given where they chose to be, that this violated the Fourth Amendment. I think Mendenhall makes very clear that the standard of seizure is whether or not a reasonable person would feel free to leave. He wasn't free to leave. I'm quite prepared to accept the concession of the United States, which is that your client was detained, albeit for a brief period of time, by virtue of where he chose to put himself in relationship to the car and the other driver. He was detained, albeit briefly. What converted this into an unlawful detention is the question, isn't it? It is, Judge. And tell me, in your view, what made this unlawful? What made this unlawful were the firearms and the fact that that's simply not reasonable. When we look at Wren, there is- Let's suppose that's right. Let's suppose they had no basis for pulling their weapons. They were detained, though, briefly, whether the weapons were pulled or not, were they not? It wasn't the weapons that caused the detention. It wasn't the weapons that converted a lawful, brief detention into an unlawful one, was it? No, Your Honor. But I think any time weapons are drawn, this court, any court, should be careful with the idea that what is being fashioned is a new blanket officer safety exception to the warrant requirement. Well, of course, the problem you have there is that you have a finding by the trial court. He says, A, they pulled their weapons, and B, they had a reason to do it. They had reason to be concerned about their safety. Well, the interesting thing- Is that a finding of fact to which we are obliged to give deference? Yes. I believe both those things are accurate, but it has to fit within a delineated warrant exception. The trial court said this was a Terry stop, but the trial court's order never, at any point, articulated what was the crime that anyone suspected my client of having committed. I don't think they suspected your client of anything. He just happened to be the wrong place at the wrong time by his choice. It's interesting because then we get into a separate line of cases where this court has taken up the idea of proximity to criminality being a basis to see someone, even without reasonable suspicion. There are two cases that are really principally on point. One cited in the government's brief- No, but I guess I want to come back to the point I'm making. If they had a basis to detain the two of them, simply by virtue of the physicality of the scene, with or without the firearms being drawn, what difference does the fact that they drew their weapon have on the Fourth Amendment analysis? You see, normally we would say if they pull their weapons, that would be powerful indicia that there was a seizure, there was a detention, maybe even an arrest. But if you accept the premise that by virtue of this circumstance, they were free to briefly detain in order to cite them as vehicular violation, why does it matter that he had a firearm? It matters for this reason, Judge. If you think of all police action in terms of a grain silo, it must first go through a funnel of some warrant exception. In this case, we'll call it a Terry stop or traffic stop, but it's irrelevant for the purpose of this hypothetical. But then after that, pursuant to Terry itself, and more recently in Wren, it still has to pass through a sieve of reasonableness. The police officer's actions always have to be reasonable, and we assess reasonable. Right, so even if it were reasonable to begin with, it was converted into an unreasonable stop and detention because they pulled their firearm. Is that essentially the argument? It's why they pull their firearms, Judge. The answer is why. The question is why. What were they trying to affect in this case? What they were trying to do was to give a person a parking ticket. Now, Florida statute 316.1945 says you can serve that ticket merely by laying the ticket on the windshield. I would venture to say that's how most of us get our tickets. They don't have to do that, though. But they don't have to. They're free to arrest them for a vehicular violation, as absurd as that might be. As I believe is pointed out in the government supplemental authority, we are here on a civil,  non-moving violation. I do not believe lawfully a client, Mr. Jones, could have been arrested to receive this ticket under Florida statute. But as far as a Fourth Amendment analysis goes, there is an independent basis of reasonableness why this seizure. Would there not have been a vehicular violation for which he could have been arrested whether the officer cited it in his ticket or not? I would admit, Judge, that there did seem to be an observed moving violation as to the driver. Then again, super- I mean, it doesn't matter what the officer cited him for. If the officer cited him for the wrong thing, walking his dog in the middle of the street when it was really a traffic violation, it wouldn't matter. Objectively, the question is, would there have been a basis to cite him for a moving violation, right? Objectively, that's right. Objectively, that's right. Officer Lopez could have contemporaneously blue-lighted this car, stopped the driver. Officer Lopez could have stopped his car, called his fellow officers back up, and then screamed to Mr. Jones, hey, you driver, come over here. Officer Lopez could have said, hey, you bystander, Mr. Gibbs, get out of here. We're going to give this man- Let me ask you just one final question to follow up on a question that Judge Dubina asked earlier. What are we to make of it that the trial judge obviously disbelieves these two cops? They say they had no fear. They say they didn't draw their weapons. Judge Marino says, uh-uh. I believe the folks on the side of the road and they had their weapons drawn. It sort of changes the whole coloration of this case, doesn't it? It does, and it really puts into perspective exactly how limited the suppression of evidence in this case would be. This case, by virtue of the fact that the police tried to color this as a mere consensual encounter, um, coupled with the fact that the judges said that guns were out to issue a parking ticket, means that this court could find just the facts of this particular seizure in this particular case as to this particular individual were unreasonable. And therefore, the district courts- Is there any significance to be drawn from the fact that the encounter was just so brief, the detention was just so brief, it was almost instantaneous before he blurted out he had a gun? No. Is that like there was a long detention here or anything like that? Guns drawn or not, I mean, it was just so brief. That's right, Judge. So the brevity is one factor, but what is indivisible is the manner. The manner was a parking ticket at gunpoint, and that makes this case so unique. Thank you very much. Thank you both. Thank you, Your Honor. We'll proceed to the-